UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HEATH RUTHEFORD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:19-cv-03005-TWP-TAB |
| YVONNE A. Nurse, YOKO SAVINO Dr., and TAMERA SMITH Nurse, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Yvonne A. ("Nurse Harmon"), Yoko Savino ("Dr. Savino"), and Tamera Smith ("Nurse Smith"), (collectively the "Defendants"). (Dkt. 51.) Plaintiff Heath Rutheford, ("Mr. Rutheford"), at all relevant times an inmate at the Correctional Industrial Facility ("CIF"), brings this action pursuant to 42 U.S.C. § 1983, alleging that he did not receive adequate medical care after suffering a seizure. Mr. Rutheford has not opposed the Motion. For the reasons explained below, the defendants' unopposed Motion for Summary Judgment is **granted**.

### I. STANDARD OF REVIEW

A motion for summary judgment asks the court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. Federal Rule of Civil Procedure 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

Defendants filed their summary judgment motion on April 15, 2021, and on that same date, filed the Notice of Right to Reply, which instructed Mr. Rutheford that he must file and serve a copy of his response to the motion for summary judgment by May 13, 2021. (Dkt. 54.) Mr. Rutheford failed to respond to the summary judgment motion. Accordingly, facts alleged in the Motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. L.R. 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a

dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"). This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). Thus, "[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

## II.  MATERIAL FACTS

The following facts, unopposed by Mr. Rutheford and supported by admissible evidence, are accepted as true.

### A.  The Parties

Mr. Rutheford was at all relevant times an inmate at CIF.[1] Defendant Dr. Savino is a physician employed at CIF who treated Mr. Rutheford on several occasions. (Dkt. 53-2 at ¶¶ 1−3.) Defendants Nurse Harmon and Nurse Smith are registered nurses who also treated Mr. Rutheford at CIF. (Dkt. 53-3 at ¶¶ 1−2, 5; Dkt. 53-4 at ¶¶ 1−2, 5.) As nurses, they did not have the authority to diagnose patients or order specific care; rather, they provided medical care in accordance with the practitioner's orders. (Dkt. 53-3 at ¶ 4; Dkt. 53-4 at ¶ 4.)

### B.  Mr. Rutheford's Medical Care

In 1995, after being hit in the head with a baseball bat, Mr. Rutheford underwent brain surgery. (Dkt. 53-5 at 12:12−18.) Ever since that surgery, Mr. Rutheford has experienced seizures and headaches. *Id.* at 10:20−21, 34:22−25. Mr. Rutheford has taken Depakote since 1996 to

---

[1] Mr. Rutheford was released from prison in October 2020. (Dkt. 53-5 at 8:17−19.)

manage his seizures. *Id.* at 11:2–4; 32:8–11. Depakote is an anti-convulsant medication used to treat seizure activity and prevent migraine headaches. (Dkt. 53-2 at ¶ 5.) Depakote did not resolve Mr. Rutheford's seizures entirely, but it did reduce their frequency. (Dkt. 53-5 at 11:2–20.)

Mr. Rutheford was prescribed Depakote the entire time he was incarcerated in the Indiana Department of Correction. *Id.* at 31:25–32:10. He also had a bottom bunk pass for his safety. (Dkt. 53-2 at ¶ 5.) Initially, Mr. Rutheford received Depakote twice daily, but he often missed his morning medication due to oversleeping.[2] (Dkt. 53-1 at 11.) In March 2019, Mr. Rutheford was referred to see Dr. Savino because he had missed his Depakote multiple times. *Id.* at 7. Dr. Savino counseled Mr. Rutheford on the importance of taking his medication, warning him that failure to take it could cause injury or death. *Id.* at 11, 15. Mr. Rutheford attributed missing his medication to anxiety that affected his sleep, so on March 21, 2019, Dr. Savino referred him to behavioral health to address his anxiety because she believed it was best for him to receive Depakote twice daily instead of modifying it to once daily. *Id.* at 17–18.

Because Mr. Rutheford continued to miss his morning Depakote, on April 5, 2019, Dr. Savino modified his prescription so that he would only take it once daily. *Id.* at 20–24. Despite the change, Mr. Rutheford continued to be noncompliant. *Id.* at 26–27.

On May 4, 2019, Mr. Rutheford was watching television in his cell at approximately 6:15 or 6:30 p.m. when he began to experience a seizure. (Dkt. 53-5 at 21:18–22; Dkt. 53-1 at 28.) He hit his face on his bunk, busting his lip open and knocking two teeth loose. (Dkt. 53-5 at 21:22–25.) A correctional officer called medical personnel to advise them of what happened, but they initially declined to see him, saying it was not serious. *Id.* at 20. He began to have trouble breathing, so he was sent to the medical unit at approximately 9:00 p.m. where he was seen by Nurse Harmon.

---

[2] Mr. Rutheford recalled that he missed his evening pills. Dkt. 53-5 at 33:4–7. Whether he missed his morning or evening medications is immaterial—the parties agree that he frequently missed his medication.

(Dkt. 53-1 at 28.)  Mr. Rutheford reported what happened and told Nurse Harmon that he was having shortness of breath and that it hurt to take deep breaths.  *Id.* at 28−29.  Nurse Harmon took Mr. Rutheford's vitals and listened to his chest, which sounded clear.  *Id.*  Because Mr. Rutheford's lip was actively bleeding, she cleaned the injured area and applied steri-strips to the wound along with a topical antibiotic.[3]  *Id.* at 29.  She also provided him a 24-hour lay-in from his job in the kitchen due to his open lip wound.  *Id.*  Nurse Harmon did not identify any significant head trauma during her examination of Mr. Rutheford, nor did she recall that Mr. Rutheford complained about his head during the encounter.  (Dkt. 53-3 at ¶ 7.)

The next morning, Nurse Smith saw Mr. Rutheford to check his wound.  (Dkt. 53-1 at 33.)  He refused to have his vitals measured.  *Id.*  Nurse Smith provided Mr. Rutheford another steri-strip and advised him to keep the wounded area dry and clean.  *Id.* at 34.  She extended his lay-in for work through the end of the following day.  *Id.*  Nurse Smith had follow-up visits with Mr. Rutheford on May 14 and May 17, 2019 to check his wound and provide antibiotic ointment for his lip.  (Dkt. 53-4 at ¶¶ 9−10.)  By the May 17, 2019 visit, his lip was almost totally healed.  *Id.* at ¶ 10; Dkt. 53-1 at 87.  She did not have any concerns for Mr. Rutheford at this visit, and she does not recall that he reported any additional complaints or concerns related to the fall.  *Id.*

Dr. Savino reviewed medical records from Mr. Rutheford's May 4 and May 5, 2019 visits with Nurses Harmon and Smith and had no concerns with the treatment they provided Mr. Rutheford.  (Dkt. 53-2 at ¶ 19.)  Mr. Rutheford testified that he disagreed with their treatment decisions because "they didn't acknowledge that [he] had a seizure" and did not conduct a blood

---

[3] Steri-strips are adhesive bandages used for the closure of lacerations, surgical incisions, and following suture removal.  *See, e.g.*  "3M Steri-Strip Reinforced Adhesive Skin Closures," 3M, https://www.3m.com/3M/en_US/p/d/hcbgebm20019/ (last visited Dec. 3, 2021).

draw to check medication levels. Dkt. 53-5 at 37:22−23; 38:11−12. He also believes that he should have been seen by a doctor given the serious nature of having a seizure. *Id.* at 38:13−20.

On May 21, 2019, Mr. Rutheford spilled coffee on his hands, receiving serious burns.[4] (Dkt. 53-1 at 36.)  He had frequent visits with medical staff in the ensuing weeks to treat his hands. *Id.* at 36−75. None of the Defendants recall Mr. Rutheford raising any concerns related to his May 4, 2019 seizure during these visits to tend to his burn wounds.  (Dkts. 53-2 at ¶¶ 14−17; 53-3 at ¶¶ 10−12; 53-4 at ¶¶ 11−13.)

The incident on May 4, 2019 was the only seizure Mr. Rutheford experienced at CIF. (Dkt. 53-5 at 34:12−15; 35:14−18.)  He has had recurrent headaches since his brain surgery, but he had access to both Tylenol and Naproxen for pain relief at the prison.  *Id.* at 36:1−5.

### III.  DISCUSSION

"Prison officials violate the [Eighth Amendment's] prohibition on cruel and unusual punishment if they act with deliberate indifference to a prisoner's serious medical condition." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The deliberate indifference "standard encompasses both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety."  *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (internal quotation omitted).

As to the first element, a "medical condition is serious if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Perry*, 990 F.3d at 511 (cleaned up).

---

[4] Mr. Rutheford does not raise claims related to the treatment for his burns in this action; he is pursuing those claims in a separate lawsuit.  (Dkt. 53-5 at 28:19−20.)

"The second element of deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (cleaned up).  A defendant must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)).  In other words, "deliberate indifference requires 'more than negligence and approaches intentional wrongdoing.'"  *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020) (quoting *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)).

Further, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances."  *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).  "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

The Defendants concede for purposes of this Motion that a seizure disorder is a serious medical condition.  (Dkt. 52 at 20.)  Thus, the only issue is whether the Defendants were deliberately indifferent to Mr. Rutheford's medical needs related to his seizure disorder.

The undisputed evidence shows that Dr. Savino was not deliberately indifferent to Mr. Rutheford's medical needs during his incarceration at CIF.  She met with him repeatedly to counsel him on the importance of being compliant with taking his Depakote. When Mr. Rutheford told her that he was having trouble taking his medication due to sleeping through morning medication distribution, she first referred him to behavioral health to address his reported anxiety and, when that did not resolve the problem, she modified his prescription to once daily.  Dr. Savino

7

did not treat Mr. Rutheford after he suffered a seizure on May 4, 2019, but she reviewed the notes of the treating nurses and found their care to be appropriate. Dr. Savino did treat Mr. Rutheford several times in May and June 2019 after he severely burned his hands, but he never raised any concerns about the seizure. That was the only seizure Mr. Rutheford experienced while at CIF.

Likewise, the undisputed evidence shows that Nurse Harmon and Nurse Smith rendered appropriate care after Mr. Rutheford suffered a seizure. Nurse Harmon took Mr. Rutheford's vitals and examined him. She observed no serious head trauma, and he reported none. Although he reported difficulty breathing, she listened to his lungs and they sounded normal. She treated the open wound on his lip by disinfecting it and providing a steri-strip to prevent infection. The day after the seizure, Nurse Smith cleaned the wound and provided a new bandage. Both nurses saw Mr. Rutheford in the following weeks after his burn accident, and he never raised any complaints related to the seizure incident.

Mr. Rutheford believes that the nurses should have taken a blood draw and referred him to the doctor. But his disagreement with their treatment decisions is not enough to establish deliberate indifference. *Johnson v. Dominguez*, 5 F.4th 818, 826 (7th Cir. 2021). And, significantly, Mr. Rutheford does not say how his treatment would have been better with a blood draw or by seeing Dr. Savino, who approved of the care provided by the nurses. In short, there is no evidence that the Defendants were aware of a risk of harm and ignored it. *Donald*, 982 F.3d at 458.

In summary, while incarcerated at CIF, Mr. Rutheford continuously received Depakote to manage his seizures, Tylenol and Naproxen to manage related headaches, and a bottom bunk pass to prevent injury. After he suffered a seizure, he received treatment for his lacerated lip. No reasonable factfinder could conclude that the Defendants were deliberately indifferent. Their Motion for Summary Judgment must be **granted**.

## IV. CONCLUSION

The Defendants' Motion for Summary Judgment, (Dkt. [51]), is **GRANTED**, and all claims against them are **DISMISSED with prejudice**.

Final judgment consistent with this Order shall issue.

**SO ORDERED.**

Date: 12/7/2021

DISTRIBUTION:

Heath Rutheford
1129 Laurel Street
Indianapolis, Indiana 46203

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Rachel D. Johnson
KATZ KORIN CUNNINGHAM, P.C.
rjohnson@kkclegal.com

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana